UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JASON SCOTT SHAW,

    Plaintiff,

v.                                                     Case No:   6:15-cv-1598-Orl-DNF

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## OPINION AND ORDER

Plaintiff, Jason Scott Shaw, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

Plaintiff protectively filed applications for DIB and SSI on February 28, 2014, alleging disability beginning July 20, 2011. (Tr. 159, 160, 199-202, 413-18, 425-33). Plaintiff's applications were denied initially on June 18, 2014, and upon reconsideration on August 22, 2014. (Tr. 292-97, 301-11). Plaintiff requested a hearing and, on February 13, 2015, an administrative hearing was held before Administrative Law Judge Douglas A. Walker ("the ALJ"). (Tr. 44-80). On March 17, 2015, the ALJ entered a decision finding that Plaintiff was not under a disability from July 20, 2011, through the date of the decision. (Tr. 12-39). Plaintiff filed a request for review on May 26, 2015, and the Appeals Council denied Plaintiff's request on July 22, 2015. (Tr. 1-8). Plaintiff initiated this action by filing a Complaint (Doc. 1) on September 25, 2015.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 20, 2011, the alleged onset date. (Tr. 14). At step two, the ALJ found that Plaintiff had the following severe impairments: ischemic heart disease, affective mood disorder, anxiety disorder and substance abuse disorder. (Tr. 15). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or

medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16).

The ALJ found that Plaintiff had the residual functional capacity ("RFC") from May 12, 2011, through August 28, 2012, to

> perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He would require work that is simple and unskilled. He can lift and carry 10 pounds frequently and 20 pounds occasionally (from very little, up to 1/3 of an 8-hour workday). He can stand and/or walk for six hours (with normal breaks) in an eight-hour workday. He can sit for six hours (with normal breaks) in an eight-hour workday. He should avoid frequent ascending and descending stairs. Due to mild to moderate pain with medication side effects, he should avoid hazards in the workplace such as protected areas of moving machinery, heights, ramps, ladders, scaffolds; and on the ground, unprotected areas of holes and pits. He can perform each of the following postural activities occasionally: balancing, stooping, crouching, kneeling, and crawling, but not climbing ropes, scaffolds or ladders exceeding 6 feet. He has non-exertional mental limitations which frequently affect his ability to concentrate upon complex or detailed tasks but he would remain capable of understanding, remembering, and carrying out simple job instructions; making work related judgments and decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting. He should avoid stressful situations such as working frequently with co-workers in a team; working directly with the public other than co-workers in a team; working directly with the public other than co-workers where frequent interpersonal interaction or discussion is required; making decisions, and using little judgment.

(Tr. 17).  At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a night auditor and hotel clerk.  (Tr. 27).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.  (Tr. 28).  Specifically, the ALJ found that Plaintiff can perform the jobs "cleaner/housekeeper," "sorter, agriculture," and "checker 1."  (Tr.

28). The ALJ concluded that Plaintiff had not been under a disability from July 20, 2011, through the date of the decision, March 27, 2015. (Tr. 29).

**II.    Analysis**

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by failing to weigh all the pertinent evidence and by failing to assign appropriate weight to the opinion of an examining, consultative physician; (2) whether the ALJ erred by relying on the testimony of a vocational expert elicited in response to a hypothetical question that did not adequately reflect Plaintiff's limitations; and (3) whether the ALJ erred in finding that Plaintiff "somewhat exaggerated" his symptoms. The Court will address each issue in turn.

> **a) Whether the ALJ erred by failing to weigh all the pertinent evidence and by failing to assign appropriate weight to the opinion of an examining consultative physician.**

Plaintiff argues that the ALJ erred by failing to state the weight assigned to the treatment notes from Bay Care Behavioral Health where Plaintiff received treatment for his mental condition during 2013 to 2015. (Doc. 18 p. 13). Further, Plaintiff argues that the ALJ erred in his treatment of the opinion of examining, consultative physician Timothy Foster, Ph.D. (Doc. 18 p. 14). Plaintiff contends that the ALJ's decision is unclear because the ALJ failed to provide a reasoned explanation for according Dr. Foster's opinion "substantial weight" and "little weight" simultaneously. (Doc. 18 p. 14). Likewise, Plaintiff contends that the ALJ erred by giving "little weight" to the opinion of the state agency physician Dawn Jackson, Psy.D., who reviewed Plaintiff's medical evidence up to August 14, 2014. (Doc. 18 p. 16).

In response, Defendant argues that Plaintiff's arguments are without merit. (Doc. 19 p. 5). Defendant contends that the ALJ thoroughly discussed the treatment notes from Bay Care Behavioral Health and the notes do not reflect disabling limitations. (Doc. 19 p. 7). In addition,

Defendant contends that the treatment notes from Bay Care Behavioral Health were completed by people who were not treating physicians or even acceptable medical sources. (Doc. 19 p. 8). Defendant argues that the ALJ properly gave Dr. Foster's opinion "little weight" because his opinion was not supported by his own examination notes, and also properly gave Dr. Jackson's opinion that Plaintiff had marked social limitations "little weight" because it was not supported by Plaintiff's daily activities or the opinions of the other state agency doctors. (Doc. 19 p. 12-13).

Here, the Court finds that the ALJ committed no error in his treatment of the medical opinions of record. As to the evidence from Bay Care Behavioral Health, the record shows that Plaintiff presented for outpatient treatment from July, 2013 through April, 2015. The treatment notes indicate that they were not completed by "acceptable medical sources," but instead "other sources." *See* 20 C.F.R. §§ 404.1502, 404.1513(a), (d), 416.902, 416.913(a), (d). For example, notes from July 19, 2013, which indicate that Plaintiff had good concentration, no abnormality in his though process, and was oriented to person, place, time and situation, were signed by Sarah Wright, B.S. (Tr. 1685). The record indicates that Sarah Wright was an intern. (Tr. 1693-96). Other treating notes were completed by Karen Correll-Miller, ARNP, for example, Plaintiff's notes from November 19, 2013, in which a Global Assessment of Functioning (GAF) score of 45 was assessed, indicating serious symptoms, but also that Plaintiff had normal speech, logical, coherent, and goal-directed thought processes, and average intellectual capacity. (Tr. 1690).

Because the treatment notes from Bay Care Behavioral Health Center were not completed by acceptable medical sources, their opinions are not medical opinion and are not entitled to any special significance or consideration. *See* 20 C.F.R. §§ 404.1513(a), (d), 404.1527(a)(2); Social Security Ruling 06-3p. The Court finds no error in the ALJ's failure to explicitly state the weight

accorded this evidence. In any event, the ALJ's decision shows that he thoroughly reviewed and summarized these records in his RFC analysis. (Tr. 20, 21, 26).

As to Dr. Foster, the record shows that Plaintiff was referred to Dr. Foster by the SSA for a mental status evaluation in June 2014. (Tr. 1702-1705). During the examination, it was noted that Plaintiff showed no problems sustaining attention; his mood was described as depressed; his affect appeared to be mood congruent; he was able to follow a simple three step instruction; he admitted to hallucinations; his judgment and insight appeared well below normal limits; and he knew that his judgment was poor when he was manic. (Tr. 1703-1704). After the examination, Dr. Foster opined that Plaintiff had the following residual functioning: understand, remember some simple instructions, but often cannot complete them; he relates less than adequately to peers, supervisors and public; he cannot manage himself appropriately around people; he cannot complete a normal workweek without interruptions from psychologically based symptoms; and that he will not likely complete work which he is assigned. (Tr. 1704-1705).

Plaintiff contends that the ALJ's decision is unclear because the ALJ seems to give substantial weight to Dr. Foster's opinion, except for the portion of the opinion indicating Plaintiff could not complete a normal workweek without interruptions from psychologically based symptoms. The Court rejects this argument. The ALJ stated in his decision that he gave substantial weight to "the objective medical findings on examination from the several medical and psychological consultants who examined the claimant," but specifically stated that he assigned little weight to Dr. Foster's opinion. (Tr. 24). The ALJ explained the basis for his decision to accord little weight to Dr. Foster's opinion. The ALJ noted that Dr. Foster's own examination findings did not support his opinion, that he was not a treating physician, that he had only examined

Plaintiff on a single occasion, and that he had based his decision on Plaintiff's subjective complaints despite there being good cause for questioning Plaintiff's reliability. (Tr. 24).

As a one-time examining physician, Dr. Foster's opinion was not entitled to any deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The ALJ stated the weight he assigned to Dr. Foster's opinion and explained his reasons for according it "little weight." The Court finds no error in the ALJ's treatment of Dr. Foster's opinion.

As to the opinion of state agency reviewer Dr. Jackson, the record shows that in August 2014, Dr. Jackson opined that Plaintiff had no restrictions on activities of daily living, marked difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration. (Tr. 236-37). Dr. Jackson opined that Plaintiff appeared capable of working. (Tr. 238). In his decision, the ALJ assigned "little weight" to Dr. Jackson's finding that Plaintiff had marked difficulties in social functioning because the finding was "extreme" and not bolstered by the medical evidence of record. (Tr. 25). Substantial evidence supports the ALJ's finding. For example, the record shows that Plaintiff shopped three to five times a week, and spent time with his friends socializing, walking, and eating meals with them three to five times a week. (Tr. 651). Further, the record shows that Plaintiff maintained a relationship with a live-in girlfriend for at least a year after the alleged onset date. (Tr. 1677). Such social activities do not support Dr. Jackson's finding that Plaintiff had marked difficulties in maintaining social functioning. Finally, the record shows that every other state agency consultant found that Plaintiff had only "moderate" difficulties in social functioning.

The Court finds no error in the ALJ's treatment of the medical record and opinions. Accordingly, the Court will not disturb the ALJ's findings on review.

      **b) Whether the ALJ erred by relying on the testimony of a vocational expert elicited in response to a hypothetical question that did not adequately reflect Plaintiff's limitations.**

Plaintiff's second raised issue relates closely to his first. Plaintiff contends that the ALJ's errors in evaluating the record and in weighing the medical opinions resulted in the ALJ posing an incomplete hypothetical question to the vocational expert and improperly relying on the elicited testimony. (Doc. 18 p. 17-19). Specifically, Plaintiff notes that when the ALJ posed a hypothetical containing the limitations opined by Dr. Foster, the vocational expert testified that there would be no work. (Doc. 18 p. 19).

In order for the testimony of a vocational expert to "constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). In this case, as explained above, Plaintiff has failed to show that the ALJ erred in his analysis of the medical record and opinions. The hypothetical question posed by the ALJ to the vocational expert accurately reflected Plaintiff's RFC and the ALJ properly relied on the vocational expert's testimony in finding that there was other work Plaintiff could perform. (Tr. 18, 63-65). The Court finds no reversible error in the ALJ's reliance on the vocational expert's testimony.

      **c) Whether the ALJ erred in finding that Plaintiff "somewhat exaggerated" his symptoms.**

Plaintiff argues that the ALJ erred by finding that Plaintiff "somewhat exaggerated" his symptoms as the record shows that Plaintiff suffered from documented impairments causing significant limitations. (Doc. 18 p. 19). Plaintiff contends that the ALJ's credibility determination is merely boilerplate language that does not offer enough reasoning to support the ALJ's finding that Plaintiff is not credible. (Doc. 18 p. 20). Defendant argues that the ALJ properly considered the evidence, including Plaintiff's noncompliance with treatment, conflicting statements about his

substance abuse, work history, and daily activities, and found that Plaintiff's subjective allegations were not entirely credible. (Doc. 19 p. 15).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. [citations omitted] Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d at 1225. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

In this case, the Court finds that the ALJ's finding that Plaintiff was not entirely credible was supported by substantial evidence. Contrary to Plaintiff's assertion that his credibility finding

was mere boiler plate, a review of the ALJ's decision shows that he explained his credibility finding at length. The ALJ noted that there is evidence that Plaintiff was not entirely compliant in taking prescribed medications, "which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application." (Tr. 26). For example, after Plaintiff was discharged from inpatient treatment in 2011, he failed to show up for his follow-up appointment, and did not receive regular mental health treatment again until 2013. (Tr. 19-20, 708). When Plaintiff did receive treatment, he was noted to be noncompliant with his prescribed medications. (Tr. 26, 1626, 1689).

In addition, the ALJ explained that his credibility finding was based in part on Plaintiff's conflicting statements regarding his substance abuse. (Tr. 26). For example, while Plaintiff denied any alcohol or substance dependence in July 2011, the record shows that only a couple of months earlier, in April 2011, Plaintiff had tested positive for cocaine, THC, and "benzos." (Tr. 684).

Finally, the ALJ's decision shows that his credibility finding was based on Plaintiff's work history. The ALJ noted that "the claimant quit his job for non-medical reasons and he worked only sporadically prior to the alleged disability onset date, which raises questions as to whether the claimant's continuing unemployment is actually due to medical impairment." (Tr. 26). Further, the ALJ noted that the record shows work activity after the alleged onset date which indicates "that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (Tr. 26).

Here, the ALJ did not offer a boilerplate explanation for his decision to find Plaintiff not entirely credible. The ALJ provided a substantive explanation for his decision supported by substantial evidence. Accordingly, the Court affirms the ALJ's decision.

**III.     Conclusion**

The decision of the Commissioner is **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 21, 2017.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties